## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRYAN SAMS,                )
                              )
       Plaintiff,         )
                              )
v.                        )     Case No. 24-CV-602-SH
                              )
JOHNSON MATTHEY INC., d/b/a  )
TRACERCO, *et al.*        )
                              )
       Defendants.     )

## DEFENDANT THE UNIVERSITY OF TULSA'S MOTION TO DISMISS

Respectfully submitted,

**Ryan A. Ray, OBA #22281**
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Ave.
Tulsa, OK 74103
(918) 583-7571
(918) 584-7846 facsimile
RRay@NWLawOK.com

**February 24, 2025**         **ATTORNEY FOR DEFENDANT,**
**THE UNIVERSITY OF TULSA**

TABLE OF CONTENTS

RELEVANT STATE COURT PROCEDURAL HISTORY ........................................................1

PLAINTIFFS' ALLEGATIONS ...................................................................................6

ARGUMENT AND AUTHORITIES .............................................................................7

    I.    STANDARD FOR DISMISSAL. ..................................................................... 7

    II.    THE COURT MAY TAKE JUDICIAL NOTICE OF THE FILINGS IN THE *CRUZ* CASE. ....................................................................................8

    III.    THE PLAINTIFF'S CLAIMS AGAINST THE UNIVERSITY ARE BARRED BY THE EXCLUSIVE REMEDY OF THE OKLAHOMA WORKER'S COMPENSATION ACT. .........................................................10

        A. The Act's Exclusive Remedy. ................................................10

        B.  The Act's Intentional-Tort Exception. ....................................11

        C.  Plaintiff Fails to Allege Facts Sufficient to Invoke the Intentional-Tort Exception to the Exclusive Remedy of the Act. ...............................................................................14

    IV.    IN THE ALTERNATIVE, THE UNIVERSITY ADOPTS THE OTHER DEFENDANTS' ARGUMENTS THAT THE PLAINTIFF HAS FAILED TO PLEAD THE ONLY ACTIONABLE CLAIM THAT COULD POSSIBLY BE AVAILABLE. ....................................................................................19

CONCLUSION ....................................................................................................19

TABLE OF AUTHORITIES

## Cases

*Allen v. Town of Colcord*
   874 F. Supp. 2d 1276 (N.D. Okla. 2012) ............................................................7

*Amphibious Partners, LLC v. Redman*
   534 F.3d 1357 (10th Cir. 2008)...........................................................................8

*Armstrong v. Carr*
   2003 OK CIV APP 80, 77 P.3d 598 ...................................................................10

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007)............................................................................................7

*Chalfant v. Tubb*
   453 F. Supp. 2d 1308 (N.D. Okla. 2006) ............................................................9

*Corman v. H-30 Drilling, Inc.*
   2001 OK 92, 40 P.3d 1051 ...................................................................................9

*Cornelsen v. S&A Mfg., Inc.*
   No. CIV-16-959-HE, 2017 U.S. Dist. LEXIS 64771
   (W.D. Okla. Apr. 28, 2017) ............................................................................7, 8

*Cornforth v. Fidelity Invs.*
   2017 U.S. Dist. LEXIS 21755, 2017 WL 650132
   (W.D. Okla. Feb. 16, 2017) ................................................................................8

*Cowan v. Oklahoma*
   No. 15-CV-117-JHP-PJC, 2016 U.S. Dist. LEXIS 182017
   (N.D. Okla. Feb. 8, 2016)...................................................................................9

*Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*
   645 Fed. Appx. 733 (10th Cir. 2016) ...............................................................11

*Curley v. Perry*
   246 F.3d 1278 (10th Cir. 2001)........................................................................20

*Diette v. Arcosa Wind Towers, Inc.*
   No. 19-CV-0440-CVE-FHM, 2019 U.S. Dist. LEXIS 174445
   (N.D. Okla. Oct. 8, 2019) ...........................................................................12, 15

*The Estate of Lockett by & through Lockett v. Fallin*
    841 F.3d 1098 (10th Cir. 2016)................................................................7

*Fields v. City of Tulsa*
    753 F.3d 1000 (10th Cir. 2014)..............................................................20

*Griffin v. Baker Petrolite Corp.*
    2004 OK CIV APP 87, 99 P.3d 262 .......................................................10

*Grynberg v. Koch Gateway Pipeline Co.*
    390 F.3d 1276 (10th Cir. 2004)................................................................8

*Hill v. Am. Med. Response*
    2018 OK 57, 423 P.3d 1119 ...................................................................10

*Hill v. United Parcel Servs. Of America, Inc.*
    2009 U.S. Dist. LEXIS 57199, 2009 WL 1974461
    (W.D. Okla. July 6, 2009) .......................................................................13

*Horton v. Holly Corp.*
    571 F. App'x 690 (10th Cir. 2014) .........................................................16

*Hutchinson v. Hahn*
    402 F. App'x 391 (10th Cir. 2010) ...........................................................8

*In re Bednar*
    634 B.R. 1 (Bankr. W.D. Okla. 2021) .......................................................8

*In re Guardianship v. Stanfield*
    2012 OK 8, 276 P.3d 989 .........................................................................4

*Kay v. Bemis*
    500 F.3d 1214 (10th Cir. 2007)..............................................................20

*Khalik v. United Air Lines*
    671 F.3d 1188 (10th Cir. 2012)................................................................7

*Largen v. Wenco Energy Corp.*
    2014 OK CIV APP 47, 377 P.3d 1267 .....................................................12

*Mid-South Iron Workers Welfare Plan v. Harmon*
    645 F. App'x 661 (10th Cir. 2016) ............................................................8

iii

*Monge v. RG Petro-Mach. Grp. Co. Ltd*
    701 F.3d 598 (10th Cir. 2012)........................................................................16

*Moore v. City of Tulsa*
    55 F. Supp. 3d 1337 (N.D. Okla. 2014) ...........................................................9

*Oxford Asset Mgmt., Ltd v. Jaharis*
    297 F.3d 1182 (11th Cir. 2002)........................................................................9

*Parret v. Unnico Service Co.*
    2005 OK 154, 127 P.3d 572 ....................................................................Passim

*Price v. Howard*
    2010 OK 26, 236 P.3d 82 ........................................................................Passim

*St. Louis Baptist Temple, Inc. v. FDIC*
    605 F.2d 1169 (10th Cir. 1979)........................................................................8

*Schendzielos v. Silverman*
    139 F. Supp. 3d 1239, 2015 WL 5964882 (D. Colo. 2015) ...............................9

*Shue v. High Pressure Transps., LLC*
    2010 U.S. Dist. LEXIS 123758, 2010 WL 4824560
    (N.D. Okla. Nov. 22, 2010) ......................................................................13, 16

*Stan Lee Media, Inc. v. The Walt Disney Co.*
    774 F.3d 1292 (10th Cir. 2014)........................................................................9

*Stills v. Whirlpool Corp.*
    No. 4:20-cv-00449-TC-JFJ, 2020 U.S. Dist. LEXIS 226811
    (N.D. Okla. Dec. 3, 2020) ...............................................................................7

*Tal v. Hogan*
    453 F.3d 1244 (10th Cir. 2006)........................................................................8

*Thompson v. Madison Mach. Co.*
    1984 OK CIV APP 24, 684 P.2d 565 .............................................................10

*Tiger v. Verdigris Valley Electric Cooperative*
    2016 OK 74, 410 P.3d 1007 ...........................................................................11

*Torres v. Cintas Corp.*
    2008 U.S. Dist. LEXIS 47377, 2008 WL 2510133
    (N.D. Okla. June 19, 2008) ......................................................................11, 13

*Towne v. Hubbard*
    2000 OK 30, 3 P.3d 154 ........................................................................9

*Wells v. Okla. Roofing & Sheet Metal, L.L.C.*
    2019 OK 45, 457 P.3d 1020 ...........................................................Passim


**Statutes**

42 U.S.C. § 2210 .......................................................................................19

12 *Okla. Stat.* § 2012 ................................................................................3

85A *Okla. Stat.* § 5 ..........................................................................Passim


**Court Rules**

Fed. R. Civ. P. 8 ........................................................................................7
Fed. R. Civ. P. 12 ..............................................................................1, 7, 8
Fed. R. Evid. 801 ....................................................................................9


**Other Authorities**

27A Fed. Proc., L. Ed. § 62:520 (2003).....................................................8

In accordance with FED. R. CIV. P. 12(b)(6), Defendant, The University of Tulsa (the "University"), moves for dismissal (with prejudice) of the Plaintiff's Petition on the grounds that his claims against the University are barred by the exclusive remedy of the Oklahoma Worker's Compensation Act (the "Act"). The Plaintiff expressly pleads that he "was employed at the University of Tulsa at the North Campus at all relevant times herein . . . ." (Petition, Dkt. # 2-2, at ¶ 12). And in a prior action arising from the exact same "spill" of "Cesium-137"—an action whose allegations the Plaintiff has, at least as to the University, copied verbatim—the District Court of Tulsa County found those exact allegations did not overcome the Act's bar (and the Oklahoma Supreme Court thereafter declined to enter relief against that Order (even though it did, at the same time, grant other extraordinary relief). There is no plausible reason for this Court to change course. Oklahoma law clearly bars the Plaintiff's claims against the University, a conclusion compelled by the Petition's allegations irrespective of whether the Court considers the history of the prior action. In the alternative, the University joins and adopts the arguments made by Defendant Johnson Matthey, Inc., d/b/a Tracerco in its separate motion to dismiss.

## RELEVANT STATE-COURT PROCEDURAL HISTORY

During the week of October 13, 2014, a Tracerco employee released Cesium-137 while performing certain research work on the University's North Campus. (Petition, Dkt. # 2-2, at ¶¶ 7-12). This, however, was not disclosed to anyone— including the University—until August of 2015. (*See id.* at ¶ 24).

On October 14, 2016, over forty (40) plaintiffs brought suit in *Cruz, et al. v. Johnson Matthey, Inc., et al.*, District Court of Tulsa County Case No. CJ-2016-3711 ("*Cruz*").[1]  The *Cruz* Plaintiffs included employees of the University of Tulsa (the "*Cruz* Employee Plaintiffs"), spouses of those employees, children of those employees, employees of the janitorial contractor, and individuals living in the surrounding neighborhood.

As to the University, the *Cruz* Employee Plaintiffs alleged:

> Further [the *Cruz* Employee Plaintiffs] were employees of the University of Tulsa during the pertinent time period. These Plaintiffs bring their claims against this Defendant pursuant to the case of *Parret v. Unnico [sic] Service*, 2005 OK 154 and its progeny and allege that the University of Tulsa acted and failed to act, with the knowledge that injury was substantially certain, to occur. Specifically, the University of Tulsa had been put on Notice numerous times by the Oklahoma Department of Environmental Quality that there were deficiencies in its radioactive program. The Oklahoma DEQ repeatedly cited the University of Tulsa for its lack of oversight, poor management and improper documentation of the radioactive program. The Oklahoma DEQ even included specific warnings to the University of Tulsa of the severe and grave consequences that would occur if the deficiencies were not corrected. Despite these numerous and specific warnings and citations from the Oklahoma DEQ, the University of Tulsa failed to correct its deficiencies knowing that injury to its employees was a substantial certainty.

(*Cruz* Amended Petition, at ¶ 19, certified copy attached as Exhibit 1).

Later in their Amended Petition, the *Cruz* Plaintiffs similarly alleged that:

> Defendant University of Tulsa failed to correct its known deficiencies in its radioactive program despite numerous prior warnings and citations from the Oklahoma DEQ. Defendant University of Tulsa's failures cause it to not detect this spill, not warn and protect its employees and neighbors to the North Campus.

---

[1] The docket sheet of *Cruz*, which exceeds 60 pages, is available at https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CJ-16-3711.

(*Id.* at ¶ 28).

The University timely filed a Motion to Dismiss in *Cruz* in accordance with 12 *Okla. Stat.* § 2012(b)(6) on August 7, 2017.[2] In the Motion, the University presented three bases for dismissal, the third of which was that the *Cruz* Employee Plaintiffs and their spouses' claims were barred by the exclusive remedy of the Act. The third basis for dismissal, relating to the Act, was an independent dismissal ground, unique to the University and not shared by the other defendants.

The Honorable Mary Fitzgerald, then the assigned Judge in *Cruz*, entered an Order Granting Defendants' Motions to Dismiss on November 20, 2017. Judge Fitzgerald, however, found that the *Cruz* Plaintiffs had not stated a cognizable claim under Oklahoma law at all and dismissed all claims as to all Defendants for the reasons set forth in the other Defendants' motion to dismiss, which the University joined and adopted. Because of that independent ruling, Judge Fitzgerald did not reach the University's independent dismissal basis under the Act.

The *Cruz* Plaintiffs appealed. The Oklahoma Court of Civil Appeals (the "COCA") adjudicated the dismissal grounds common to all defendants, affirming in part, reversing in part and remanding for further proceedings. (*See* COCA Opinion,

---

[2] *Cruz* had been removed by Chevron to this Court, wherein this Court extended Defendants' deadline to respond to the *Cruz* Plaintiffs' Amended Complaint to fifteen (15) days following the Court's decision on the *Cruz* Plaintiffs' Motion to Remand. Judge Eagan entered an Order granting the Motion to Remand on July 21, 2017. Fifteen days from July 21, 2017 was Saturday, August 5, 2017. Accordingly, Defendants' responses to the *Cruz* Amended Complaint were due Monday, August 7, 2017.

April 2, 2019, copy attached as Exhibit 2). With respect to the University's dismissal argument under the Act, the COCA specifically noted that the District Court's November 20, 2017 dismissal order did not address this ground for dismissal:

> The order on appeal does not explicitly address . . . the TU employees' intentional tort claims against their employer, whether the Administrative Workers' Compensation Act (AWCA) is the TU employees' exclusive remedy, and whether the AWCA is the TU employees' spouses' exclusive remedy. We will not address these issues on appeal. "This Court does not make first-instance determinations of disputed issues of either law or fact in the exercise of appellate jurisdiction." *In re Guardianship v. Stanfield*, 2012 OK 8, ¶ 27, 276 P.3d 989. **These issues should be addressed on remand**.

(*Id.* at pp. 14-15) (emphasis added).  The Supreme Court later denied the *Cruz* Plaintiffs' petition for certiorari.  (Order Denying Certiorari, copy attached as Exhibit 3).

Thereafter, the District Court (now Judge LaFortune, following Judge Fitzgerald's retirement) ultimately permitted supplemental briefing on the argument in the University's motion to dismiss on the Act's exclusivity.  Both parties complied, and the Court then held a hearing on the issue.

On November 24, 2020, Judge LaFortune entered a written Order granting the University's motion to the extent of the exclusivity bar of the Act as to some, but not all, of the Plaintiffs in the case.  (November 24, 2020 Dismissal Order, certified copy attached as Exhibit 4).  The Order carefully analyzed (i) the issue presented (*Id.* at ¶ 1), (ii) the relevant law on exclusivity and the intentional-tort exception that this Court has recognized (*Id.* at ¶¶ 2-5, 7), and (iii) the *Cruz* Amended Petition's allegations.  (*Id.* at ¶¶ 6-7).

4

The Court concluded:

> no one is even remotely suggesting that TU knew with substantial certainty that a third-party company would release a radioactive substance as a result of past "deficiencies" in TU's radioactive program. Even more importantly, the Plaintiff's allegations rely on the fact that TU had been put on notice numerous times by Oklahoma DEQ that there were deficiencies in its radioactive program, including lack of oversight, poor management and improper demonstration, and those deficiencies would have severe and grave consequences if the deficiencies were not corrected.
>
> Plaintiffs allege they failed to correct these deficiencies. However, in *Price, supra,* at ¶ 16, the Oklahoma Supreme Court opined that "violation of government safety regulations, even if willful and knowing," do not rise to the level of an intentional tort or an actual intent to injure. And, as stated by the Court in *Wells, supra,* "mere carelessness or negligence, however gross, will not suffice," at ¶ 19. Further, even TU's cognizance of a foreseeable risk, high probability, or substantial likelihood of injury are insufficient to impose tort liability. *Price, supra,* at ¶ 10.
>
> The Court find that the exclusivity provisions of the Act apply to TU employees and, as a matter of law, there is no plausible demonstration by the Plaintiff that TU committed any intentional tort against these employees.

(*Id.* at ¶¶ 7-8).

In response, the *Cruz* Plaintiffs moved to reconsider again, focusing on the same allegations and making the same arguments as to them. The University responded in opposition, and the Court held a hearing on the latest motion to reconsider. At the hearing, the Court denied the motion to reconsider. (Feb. 23, 2022 Mtn Hrg. Tr., at 5-9, excerpts attached as Exhibit 5).

Thereafter, the *Cruz* Plaintiffs sought an extraordinary writ from the Oklahoma Supreme Court, on the dismissal of the *Cruz* Employee Plaintiffs' claims and Judge LaFortune's entry of a so-called *Lone Pine* order applicable to the case writ

large.  Though the Oklahoma Supreme Court granted a writ of prohibition against the *Lone Pine* order, all participating justices agreed that no relief was warranted as to the dismissal of the *Cruz* Employee Plaintiffs' claims against the University.  (Sept. 26, 2022 Order of the Oklahoma Supreme Court, copy attached as Exhibit 6).

## PLAINTIFF'S ALLEGATIONS

Despite the widespread knowledge of the Cesium-137 release in the fall of 2015 and thereafter on the North Campus, Plaintiff did not bring this action until November 12, 2024, nearly a decade later and more than a decade after the actual release.

As to the University, Plaintiff alleges:

This Plaintiff brings his claims against University of Tulsa pursuant to the case of *Parret v. Unnico [sic] Service*, 2005 OK 154 and its progeny and alleges that the University of Tulsa acted, and failed to act, with the knowledge that injury was substantially certain to occur. Specifically, the University of Tulsa had been put on Notice numerous times by the Oklahoma Department of Environmental Quality that there were deficiencies in its radioactive program. The Oklahoma DEQ repeatedly cited the University of Tulsa for its lack of oversight, poor management and improper documentation. of the radioactive program. The Oklahoma DEQ even included specific warnings to the University of Tulsa of the severe and grave consequences that would occur if the deficiencies were not corrected. Despite these numerous and specific warnings and citations from the Oklahoma DEQ, the University of Tulsa failed to correct its deficiencies knowing that injury to its employees was a substantial certainty.

(Petition, Dkt. 2-2, at ¶ 17).  Substantively identical allegations are set forth again in Paragraphs 27 – 33 of the Plaintiff's Petition.  If these look familiar, they should.  The Plaintiff's allegations here are substantively ***identical*** to those made by the *Cruz* Employee Plaintiffs as to the University.

## ARGUMENT AND AUTHORITIES

### I.   STANDARD FOR DISMISSAL.

To state a claim, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief," but a complaint must "contain enough facts to state a claim for relief that is plausible on its face." *Allen v. Town of Colcord*, 874 F. Supp. 2d 1276, 1282 (N.D. Okla. 2012) (citation and quotation omitted). "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' are insufficient." *The Estate of Lockett by & through Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016). "Accordingly, in examining a complaint under Rule 12(b)(6), [the Court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). Ultimately, "determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and commons sense." *Twombly*, 550 U.S. at 556.

The Act's exclusive remedy is an issue properly decided on a motion to dismiss. *See, e.g.*, *Stills v. Whirlpool Corp.*, No. 4:20-cv-00449-TCK-JFJ, 2020 U.S. Dist. LEXIS 226811, at *6-8 (N.D. Okla. Dec. 3, 2020); *Cornelsen v. S&A Mfg., Inc.*, No. CIV-16-

959-HE, 2017 U.S. Dist. LEXIS 64771, at *6 (W.D. Okla. Apr. 28, 2017). Here, the

Plaintiff fails to allege sufficient facts to satisfy the intentional-tort exception and

thus he is limited to the exclusive remedy of the grand bargain set forth in the Act.

## II. THE COURT MAY TAKE JUDICIAL NOTICE OF THE FILINGS IN THE *CRUZ* CASE.

The University's attachment of filings from *Cruz* does not convert its motion to

one for summary judgment. "[F]acts subject to judicial notice may be considered in a

Rule 12(b)(6) motion without converting the motion to dismiss into a motion for

summary judgment." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citing

*Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); 27A

Fed. Proc., L. Ed. § 62:520 (2003)). "Courts may take judicial 'notice of proceedings

in other courts, both within and without the federal judicial system, if those

proceedings have a direct relation to the matters at issue.'" *Mid-South Iron Workers*

*Welfare Plan v. Harmon*, 645 F. App'x 661, 665-66 (10th Cir. 2016); *St. Louis Baptist*

*Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979).

> It is well established a court may take judicial notice of its own records
> as well as records of other courts, particularly in closely related cases.
> *Hutchinson v. Hahn*, 402 F. App'x 391, 394-95 (10th Cir. 2010) (citing
> St. *Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.
> 1979)); *Cornforth v. Fidelity Invs.*, 2017 U.S. Dist. LEXIS 21755, 2017
> WL 650132, at *2 (W.D. Okla. Feb. 16, 2017). Federal courts may take
> judicial notice of proceedings in other courts if those proceedings have a
> direct relation to the matters at issue. *St. Louis Baptist Temple*, 605 F.2d
> at 1172. Courts are entitled to take judicial notice of a memorandum and
> orders from other litigation involving the same parties where an earlier
> court made factual findings regarding issues in the current proceeding.
> *Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1361-62 (10th
> Cir. 2008).

*In re Bednar*, 634 B.R. 1, 3 n.3 (Bankr. W.D. Okla. 2021).

As to pleadings, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein." *Oxford Asset Mgmt., Ltd v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). But, of course, the University does not offer the *Cruz* Amended Complaint to prove its truth—the allegations were there, as they would be here, sharply disputed. The University only offers them to show their contents, which is all that matters for this Motion.[3] As to the Orders (of both the District Court and the Oklahoma Appellate Courts), "[t]his Court may take judicial notice of . . . the opinions of other courts." *Cowan v. Oklahoma*, No. 15-CV-117-JHP-PJC, 2016 U.S. Dist. LEXIS 182017, at *16 n.9 (N.D. Okla. Feb. 8, 2016) (citing *Stan Lee Media, Inc. v. The Walt Disney Co.*, 774 F.3d 1292, 1298, n.2 (10th Cir. 2014); *Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 2015 WL 5964882, *9-*10 (D. Colo. 2015); *Moore v. City of Tulsa*, 55 F. Supp. 3d 1337, 1341-42 (N.D. Okla. 2014)).

But if the Court disagrees in any sense, the attached materials can be excluded and the University's arguments remain unaffected. *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1313 (N.D. Okla. 2006) ("Tenth Circuit precedent is clear that a district court . . . may decline to consider material outside of the complaint."). Even in that event, the Plaintiff's allegations fail to even remotely approach meeting the required

---

[3] It does bear noting that, through at least his agent's copying of those allegations, the Plaintiff has likely adopted the content of the *Cruz* Amended Complaint in accordance with Fed. R. Evid. 801(d)(2)(B). *Corman v. H-30 Drilling, Inc.*, 2001 OK 92 n.3, 40 P.3d 1051, 1057 n.3 ("A lawyer acts as personal agent of the client." (citing *Towne v. Hubbard*, 2000 OK 30, ¶ 14, 3 P.3d 154, 160)).

standard, as set forth below.  This would remain true even if the *Cruz* Case had never happened.

### III.   THE PLAINTIFF'S CLAIMS AGAINST THE UNIVERSITY ARE BARRED BY THE EXCLUSIVE REMEDY OF THE OKLAHOMA WORKER'S COMPENSATION ACT.

#### A. *The Act's Exclusive Remedy.*

It is fundamental that the "rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee. . . ." 85A *Okla. Stat.* § 5(A). Oklahoma law "is clear that a claim under the Workers' Compensation Act is the exclusive remedy for accidental injuries . . . ." *Armstrong v. Carr*, 2003 OK CIV APP 80, ¶ 25, 77 P.3d 598, 603; *Griffin v. Baker Petrolite Corp.*, 2004 OK CIV APP 87, ¶ 19, 99 P.3d 262, 267 ("Because Plaintiff's emotional distress arose out of the same job-related exposures and accompanied the job-related occupational disease, Plaintiff's sole and exclusive remedy for his emotional injury lay in workers' compensation . . . ."); *Thompson v. Madison Mach. Co.*, 1984 OK CIV APP 24, ¶ 17, 684 P.2d 565, 568 ("[T]he workers' compensation statutes were designed to provide the exclusive remedy for accidental injuries sustained during the course and scope of a worker's employment.").

The Oklahoma Supreme Court refers to the Act's balance between employees' rights under the Act and the Act's exclusive remedy as the "grand bargain that forms the basis for workers' compensation law." *Hill v. Am. Med. Response*, 2018 OK 57, ¶ 58, 423 P.3d 1119, 1137. The grand bargain "strikes a balance between the rights and duties of Oklahoma employers and employees." *Id.* at ¶ 62. "[T]he proper forum

for challenging the sufficiency of the workers' compensation awards and the policy choices underlying the grand bargain is before the Legislature, not this Court." *Id.* at ¶ 63 (citing *Torres v. Seaboard Foods, LLC*, 2016 OK 20, ¶ 51, 373 P.3d 1057, 1080).

**B. The Act's Intentional-Tort Exception.**

The Act contains an exception to its exclusive remedy for injuries that are the result of an employer's intentional conduct. *See* 85A *Okla. Stat.* § 5. The Oklahoma Supreme Court has characterized the conduct needed to meet this intentionality standard in varying ways over time. In *Parret v. UNICCO Serv. Co.*, 2005 OK 54, 127 P.3d 572, the Oklahoma Supreme Court established the "substantial certainty" standard to "delineate whether an act was sufficiently intentional to fall outside the exclusive-remedy ambit of the Workers' Compensation Act." *See Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 645 Fed. Appx. 733, 739 (10th Cir. 2016) (citing *Parret*, 127 P.3d at 573-74). Put simply, a plaintiff may only bring a claim outside the Act against an employer under the following facts: "[A]n actor's conduct is intentional when the actor has the desire to cause the consequences of the act or when the actor knows the consequences are substantially certain to result from the act." *Parret*, *supra*, at ¶ 17, 127 P.3d at 577.

85A *Okla. Stat.* § 5[4] provides that an "intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury."  85A *Okla. Stat.* § 5(B).  And the Oklahoma Supreme Court

---

[4] The Oklahoma Legislature amended the Act in 2010. *See Tiger v. Verdigris Valley Electric Cooperative*, 2016 OK 74, ¶ 13 410 P.3d 1007, 1011 n.2.

decided that since "Specific Intent and Substantial Certainty are Nomenclatures of an Intentional Tort," 85A *Okla. Stat.* § 5(B) was, therefore, simply a restating of the *Parret* test in different language. *Wells v. Okla. Roofing & Sheet Metal, L.L.C.*, 2019 OK 45, ¶ 7, 457 P.3d 1020, 1024; *Diette v. Arcosa Wind Towers, Inc.*, No. 19-CV-0440-CVE-FHM, 2019 U.S. Dist. LEXIS 174445, at *9 (N.D. Okla. Oct. 8, 2019) ("after *Wells*, the substantial certainty test of *Parret* remains the standard for analyzing an intentional tort outside of a workers' compensation claim.").

Plaintiff may argue that *Wells* allows him to pursue his claims against the University without limitation. It does not. *Wells* found that, irrespective of the language of 85A *Okla. Stat.* § 5(B)(2), the only test for determining whether the intentional-tort exception applies is that set forth in *Parret*. *Wells*, *supra*, at ¶ 17, 457 P.3d at 1027.[5]

One thing remains constant: the Act's intentional-tort exception is still to be narrowly construed to only apply to *intentional* conduct. *See Parret*, *supra*, at ¶ 27,

---

[5] The *Wells* Court did not find any portion of 85A *Okla. Stat.* § 5(B)(2) to be unconstitutional. Indeed, it expressly said it was interpreting the statute to avoid unconstitutionality. *Wells*, *supra*, at ¶ 22, 457 P.3d at 1029. This means, post-*Wells*, there continues to be a mandatory requirement that an "employee shall plead facts that show it is at least as likely as it is not that the employer acted with the purpose of injuring the employee." 85A *Okla. Stat.* § 5(B)(2). Indeed, in *Largen v. Wenco Energy Corp.*, 2014 OK CIV APP 47, 377 P.3d 1267, both the Honorable Rebecca B. Nightingale (of the District Court of Tulsa County) and the COCA found dismissal of a plaintiff's petition was proper because the plaintiff failed to plead sufficient facts to invoke the intentional-tort exception to the exclusivity of the Act. *Parret* itself, of course, expressly states that "the employer must have intended the act" alleged to trigger its exception. *Parret*, *supra*, at ¶ 24, 127 P.3d at 579. Thus, nothing in *Wells* displaces the statutory requirement to plead facts demonstrating such an intent, which has not been done here.

127 P.3d at 579 ("This pronouncement [the substantial certainty test] is not intended to expand the narrow intentional tort exception to workers' compensation exclusivity."). Accordingly, this Court should apply the *Parret* standard, as reaffirmed in *Wells* and as set forth in 85A *Okla. Stat.* § 5(B)(2), in determining whether the Plaintiff's claims against the University satisfy the intentional-tort exception to the Act.

Under the applicable standard, Plaintiff must plead facts, taken as true, plausibly establishing that either the University "(1) desired to bring about the worker's injury or (2) acted with the knowledge that such injury was substantially certain to result from the employer's conduct." *Parret*, *supra*, at ¶ 24, 127 P.3d at 579; *Shue v. High Pressure Transps., LLC*, 2010 U.S. Dist. LEXIS 123758, 2010 WL 4824560, at *3 (N.D. Okla. Nov. 22, 2010) ("[i]t is not sufficient for a plaintiff to allege that an employer acted willfully or intentionally without stating supporting facts in the complaint that could create liability under this standard." (applying *Parret*)); *see also Hill v. United Parcel Servs. Of America, Inc.*, 2009 U.S. Dist. LEXIS 57199, 2009 WL 1974461 (W.D. Okla. July 6, 2009) (applying *Parret*); *Torres v. Cintas Corp.*, 2008 U.S. Dist. LEXIS 47377, 2008 WL 2510133 (N.D. Okla. June 19, 2008) (applying *Parret*). "Under the second part of this standard, ***the employer must have intended the act*** that caused the injury with knowledge that the injury was substantially certain to follow. ***The issue is not merely whether injury was substantially certain to occur, but whether the employer knew it was substantially certain to occur.***" *Parret*, *supra*, at ¶ 24, 127 P.3d at 579 (emphasis added). The Court

explained that the "substantial certainty" standard articulated under the second prong "strikes the proper balance by emphasizing employees' interest in protection from employer misconduct while maintaining employers' fixed liability for all but ***intentional*** workplace injuries." *Id.* at ¶ 21, 127 P.3d at 579 (emphasis added).

The Court in *Wells* summed up the Act's balance: "The key here is that the Act only covers injuries or deaths caused by accidents based on negligence where a duty of care has been breached. The Act was never intended as a remedy for intentional torts." *Wells*, 2019 OK at ¶ 23. The Court in *Wells* further explained that whether the intentionality is called "specific intent" or "substantial certainty," "[b]oth require a knowledge of foreseeable consequences and are interpreted to mean ***intentionally knowing culpable acts.***" *Id.* at ¶ 17 (emphasis added).

**C. Plaintiff Fails to Allege Facts Sufficient to Invoke the Intentional-Tort Exception to the Exclusive Remedy of the Act.**

Nowhere in Plaintiff's Petition does he allege any conduct on the part of the University other than, at most, negligence resulting in an accident.[6] Plaintiff does not allege any facts supporting a legal theory that the University intended any act with knowledge that the act was substantially certain to result in injuries to him.

The issues presented in the instant case are comparable in some respects to *Price v. Howard*, 2010 OK 26, 236 P.3d 82, albeit vastly different harms. In *Price*, the employee plaintiff, along with his company's president, and a majority

---

[6] Even if some other defendant engaged in intentional conduct, which the University does not concede has been alleged here, it would be irrelevant to this Motion since *Parret* clearly requires intent ***by the University***.

stockholder, were killed in a plane crash while travelling on company business. *Price*, 236 P.3d at 85. The employer, ServiCenter, had installed an experimental propeller and additional fuel tanks to the plane in order to use the plane as a "marketing tool to current and prospective customers of ServiCenter in an attempt to attract additional business." *Id.* ServiCenter had knowledge that the plane was approximately one thousand pounds too heavy for takeoff (due in part to the additional fuel tanks), was to take off in foul weather, and carrying the employee plaintiff in violation of federal regulations due to the aircraft's experimental operating conditions. *Id.*

The Court, however, concluded that there was no evidence ServiCenter was substantially certain the plane would crash. *Id.* at p. 85. The Court observed there was "no evidence that the pilot or any of the other passengers on the plane had any intention of harming themselves or others." *Id.* In other words, ServiCenter, and in particular its president who perished, could not have intended for their own plane to crash.[7] Accordingly, while the Court noted that the decision to allow the plane to take off under such circumstances may have been reckless, ServiCenter's conduct did not rise to the level of substantial certainty. *Id.* And as for the violation of federal regulations, the Court stated that "violation of governmental safety regulations, even if wilful [sic] and knowing, does not rise to the level of an intentional tort or an actual intent to injure." *Id.* at 90; *Diette*, 2019 U.S. Dist. LEXIS 174445, at *10 n.4

---

[7] Similarly, it does not make sense that the University would intend for a radioactive chemical release on its own campus.

("Plaintiff alleges that the OSHA reports demonstrate that defendants acted with substantial certainty that Christian Diette's death would occur. . . . However, OSHA violations do not establish an intentional tort under *Parret*."); *Horton v. Holly Corp.*, 571 F. App'x 690, 694 (10th Cir. 2014) ("Although the OSHA and EPA alerts are important indicators that the company knew substantial risks existed, the 'violation of government safety regulations, even if wil[l]ful and knowing, does not rise to the level of an intentional tort or an actual intent to injure.'" (quoting *Price v. Howard*)); *Monge v. RG Petro-Mach. Grp. Co. Ltd*, 701 F.3d 598, 608 (10th Cir. 2012) ("Mr. Monge may have had a meritorious claim to recover for his tragic injuries outside of workers' compensation if he were required to show that EWS had knowledge of foreseeable risk, high probability, or even substantial likelihood of injury, but "[n]othing short" of EWS's knowledge of the substantial certainty of injury will do under *Parret* and *Price*."); *Shue v. High Pressure Transps., Ltd. Liab. Co.*, No. 10-CV-0559-CVE-PJC, 2010 U.S. Dist. LEXIS 123758, at *20 (N.D. Okla. Nov. 22, 2010) ("[T]he Oklahoma Supreme Court has rejected the use of OSHA violations to establish an intentional tort for a *Parret* claim.").

Here, the Plaintiff alleges that the Oklahoma Department of Environmental Quality had, in the past, placed the University on notice and cited it for deficiencies related to its radioactive program. (Petition, Dkt. # 2-2, p. 3, ¶ 17; *id.* p. 5, ¶ 30). The Petition further alleges that the University "failed to correct its deficiencies knowing that injury to its employees was a substantial certainty." (*Id.* at ¶¶ 17, 33). The connection, if any, between past notices and citations and the event that actually

caused the Plaintiff's alleged injuries (Tracerco's Cesium-137 release) is much too tenuous to survive *Parret's* substantial-certainty test. The tenuity of this claim is even further stretched by the fact it was a third-party company, Tracerco, that Plaintiff alleges mishandled the Cesium-137. Again, the harm must be more than foreseeable, probable, or likely. *See Parret*, 127 P.3d at 579. The University must have "acted with the knowledge that such injury was substantially certain to result from the employer's conduct." *Id*. The Petition does not contain any factual allegations even remotely suggesting that the University knew with substantial certainty that a third-party company would release a radioactive substance as a result of past "deficiencies" in the University's radioactive program. Moreover, as discussed in *Price*, the violation of governmental regulations, even if willful and knowing, does not constitute an intentional tort.

The Plaintiff also alleges that the University did not properly oversee Tracerco's testing. (Petition, Dkt. # 2-2, p. 5, ¶ 28). This allegation is a bald recitation of the elements of a negligent-supervision claim and fails to state any facts demonstrating that Plaintiff is entitled to relief under the intentional-tort exception (which is the only possible path to relief against the University). Regardless, even taking the allegation as true, the Petition does not contain facts showing that the University knew with substantial certainty that Tracerco would release Cesium-137 as a result of the University's alleged lack of supervision. For example, the Petition does not allege that the University had any prior knowledge of a propensity on Tracerco's part to release radioactive substances, or that the University knew the

specialized container may have been defective.  While a failure to supervise, if true, may constitute negligence or even recklessness, it does not rise to the level of intentional conduct.

Plaintiff's allegation that the University had been given notice and cited for past deficiencies in its radioactive program, unrelated to the actual alleged harm that occurred here—the release of Cesium-137 by a third-party vendor—(Petition, Dkt. # 2-2, p. 3, ¶ 17), is far too tenuous to satisfy the requirement set forth in 85A *Okla. Stat.* § 5(B)(2) that Plaintiff alleges facts plausibly demonstrating the University had—consistent with *Parret*—knowledge that it was substantially certain that Tracerco would release Cesium-137 to spill and cause injury.  The Petition does not contain any factual allegations even remotely suggesting that the University knew with substantial certainty that a third-party company would release a radioactive substance as a result of past "deficiencies" in the University's radioactive program, which, notably, are not alleged to relate to third-party releases of radioactive substances.

The Plaintiff also alleges that the University did not properly oversee Tracerco's testing.  (Petition, Dkt. # 2-2, p. 3, ¶ 17).  For current purposes, the Court can assume this is true.  But this allegation is a bald recitation of a negligent-supervision claim and fails to state any facts demonstrating that Plaintiff is entitled to invoke the *intentional* tort except to the Act's exclusivity provision.  Regardless, even taking the allegation as true, the Petition does not contain facts showing that the University knew with substantial certainty that Tracerco would release Cesium-

137 as a result of the University's alleged lack of supervision.  While a failure to supervise, if true, could constitute negligence or even recklessness, it does not rise to the level of intentional conduct.

**IV.   IN THE ALTERNATIVE, THE UNIVERSITY ADOPTS THE OTHER DEFENDANTS' ARGUMENTS THAT THE PLAINTIFF HAS FAILED TO PLEAD THE ONLY ACTIONABLE CLAIM THAT COULD POSSIBLY BE AVAILABLE.**

Even if there could be some claim against the University by the Plaintiff—there cannot due to the Act's exclusivity provision, the extremely narrow exception to which has not been plausibly invoked—the University agrees with and adopts the other Defendants' argument (in their separately filed motion to dismiss, Dkt. # 25) that Plaintiff's allegations are within the scope of the Price-Anderson Act (the "PAA"), that the PAA pre-empts the theories that the Plaintiff is attempting to pursue, and that the Plaintiff's allegations are not sufficient to state a claim under the PAA and the PAA otherwise bars his claims.

**CONCLUSION**

The Plaintiff's claims against the University are subject to the exclusive remedy of the Oklahoma Workers' Compensation Act. Plaintiff does not allege any facts supporting his attempt to invoke the Act's intentional-tort exception under the standards set forth by the Oklahoma Supreme Court in *Parret* and *Wells*—an attempt which is conclusory a best. At most, Plaintiff's allegations could show the University was negligent because it could have maintained better safety measures and better supervised Tracerco's testing. Such allegations, however, do not come close to establishing intentional conduct taken with knowledge that an injury was

substantially certain to occur, which 85A *Okla. Stat.* § 5(B)(2) requires the Plaintiff to plausibly plead through factual allegations. Beyond that, and in the alternative, the other Defendants' motion to dismiss sets forth other reasons that the Plaintiff's claims may not go forward—reasons that the University adopts to the extent the Court need reach that issue as to it.

For all of these reasons, the University of Tulsa respectfully requests that the Court dismiss all of the claims asserted by the Plaintiff *with prejudice.*[8]

Respectfully submitted,

  /s/ Ryan A. Ray
**Ryan A. Ray,** OBA #22281
**NORMAN WOHLGEMUTH, LLP**
3200 Mid-Continent Tower
401 South Boston Avenue
Tulsa, OK 74103-4023
(918)-583-7571
(918)-584-7846 (facsimile)
RRay@NWLawOK.com

**ATTORNEY FOR DEFENDANT, THE UNIVERSITY OF TULSA**

---

[8] Dismissal of a claim with prejudice is appropriate when it is "obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Kay v. Bemis,* 500 F.3d 1214, 1217 (10th Cir. 2007) (quoting *Curley v. Perry,* 246 F.3d 1278, 1281 (10th Cir. 2001)). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Fields v. City of Tulsa,* 753 F.3d 1000, 1012 (10th Cir. 2014) (quotation omitted). It would be futile to grant the Plaintiff leave to amend because all of his alleged injuries occurred within the scope of his work for the University. Further, the Plaintiff alleges facts that show the University did not have the requisite intent to injure him that is necessary to invoke *Parret.* Accordingly, the Plaintiff's remedy, if any, is limited to the Oklahoma Workers' Compensation Act—as to the University. These infirmities are not curable through amendment.

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of February 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following registrants:

Charles C. McCaskey
G. Gene Thompson
Kaylee P. Davis-Maddy
Mark E. Hardin
Mary Quinn Cooper
Matthew Cecconi
Michael S. Linscott

*/s/ Ryan A. Ray*
Ryan A. Ray