# Exhibit 4

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

DISTRICT COURT
FILED
NOV 24 2020
DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JONATHON CRUZ, et al. )
)
Plaintiffs, )
v. ) Case No. CJ-2016-3711
) Judge LaFortune
JOHNSON MATTHEY INC., d/b/a )
TRACERCO, et al. )
)
Defendants. )

### ORDER GRANTING DEFENDANT THE UNIVERSITY OF TULSA'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND DENYING DEFENDANTS' JOINT MOTION FOR ENTRY OF A CASE MANAGEMENT ORDER

On this 23rd day of November, 2020, Defendant The University of Tulsa's ("TU") Motion to Dismiss Plaintiff's Amended Complaint filed August, 7, 2017, comes on for decision. The Court has also reviewed the Plaintiff's Response filed August 23, 2017, TU's Reply filed September 13, 2017, TU's Supplemental Brief filed July 15, 2020 and Plaintiff's Supplemental Brief filed July 15, 2020. The Court also conducted a hearing on TU's Motion on August 21, 2020.

The Court has also reviewed the Defendants' Joint Motion for Entry of a Case Management Order filed December 11, 2019, the

1

Plaintiff's Response filed December 26, 2019, as well as caselaw submitted by both the Plaintiffs and Defendants. This Motion was also heard by the Court on August 21, 2020.

Based on the Court's review of the foregoing pleadings and the argument and authorities presented at the hearing of August 21, the Court makes the following findings and conclusions:

1.  The issue remaining in TU's Motion to Dismiss, after the decision by the Oklahoma Court of Civil Appeals in Supreme Court Case No. 116, 640, revolves around the applicability of the Oklahoma Administrative Worker's Compensation Act, 85A O.S.Supp.2019, §§ 5 et seq. ("Act"), to TU employees and their dependents' tort claims against TU.

2.  Section 5(A) of the Act provides, in part:

    The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee...dependents...or anyone else claiming rights to recovery on behalf of the employee against the employer...on account of injury, illness, or death.

3.  Notwithstanding the exclusivity provision of Section 5(A), Section 5(B)(2) provides, in part:

    Exclusive remedy shall not apply if:

> \*\*\*
> 2. The injury was caused by an intentional tort committed by the employer. An intentional tort shall exist only when the employee is injured as a result of willful, deliberate, specific intent of the employer to cause such injury. Allegations or proof that the employer had knowledge that the injury was substantially certain to result from the employer's conduct shall not constitute an intentional tort. The employee shall plead facts that show it is at least as likely as it is not that the employer acted with the purpose of injuring the employee. The issue of whether an act is an intentional tort shall be a question of law.

4. In its Motion to Dismiss, TU seeks the protection of the Act's exclusive remedy provision, arguing that the Act's exclusive remedy provisions bar the TU employees and their spouses' claims. Further, that the intentional tort exception does not apply. This is, by statute, a question of law.

5. In analyzing whether the intentional tort exception of the Act's exclusivity applies to the TU's employees and spouses' claims, this Court will first look to the Oklahoma Supreme Court's most recent pronouncement on this issue, Wells v. Oklahoma Roofing & Sheet Metal, 2019 OK 45. In Wells, the Court was analyzing the Act's exclusivity provisions where an employee had fallen and injured himself at work. The employer was cited by OSHA for a violation

related to the duty to have a sufficient fall protection system. Id. at ¶2.

The Court first cited to its earlier decision in Parret v. Unicco Serv. Co., 2005 OK 54. In Parret, the Court reiterated that an employer's intentional acts against its employee come within the exclusivity exception to the worker's compensation laws, as intentional acts are neither accidental in nature nor arise out of the normal course and scope of an employer/employee relationship. Id. at ¶¶8-9. Also, the Court in Parret then shifted its focus to the substantial certainty element, stating that the employer not only had to intend the act that caused the injury, but also required that the employer knew that the injury was substantially certain to follow. Id. at ¶24.

The Court opined that the employee, then, "must allege facts which 'plausibly demonstrate that' the conduct was intentional…" Id. at ¶11. The Court noted that the "major flavor of intentional tort is the actor's subjective intent to cause harm." Wells, supra, at ¶17. In this regard, the Court again referred to Parret and its recognition that the Legislature's intent to permit recovery for an employer's intentional acts was only when an employer acts with the specific

4

intent to cause an injury. It must be proven "that the willful, deliberate, culpable act was intentional." Id. at ¶17.

The Court concluded:

> We think by the words **"willful, deliberate, specific intent of the employer to cause such injury"** that the Legislature unequivocally intended to convey that the employer must have determined to injure an employee and used some means appropriate to that end; and that there must be a deliberate intent. It is now settled that an employer's **willful, deliberate, specific intent to injure** with the purpose to cause injury or which injury is substantially certain that makes an employer's act or failure to act intentional. Mere carelessness or negligence, however gross, will not suffice.

(Emphasis original.) Id. at ¶19.

6. In their Amended Petition, ¶19, the Plaintiffs allege:

> All the Plaintiffs allege that the University of Tulsa was negligent, grossly negligent, reckless and wanton in its oversight, management and supervision of the testing conducted by Tracerco during the pertinent time period. The University of Tulsa should have recognized the nature of the testing being conducted and required appropriate safety measures be in place for the use of radioactive Cesium 137.....Further Plaintiffs JONATHAN CRUZ, SCOTT BENDER, KNOARK ORGRA, BEN BBOSA, JOSEPH NEIL SQUIRE, DEREK LEY, LAURA OLSON, MARTIN BOLIN, GARRET ALAN PIERCE, MOSES THOMPSON, CASH "C.J." STEVENSON, MICHAEL ETHRIDGE, ROBERT DARDEN, STEVE TURPIN were employees of the University of Tulsa during the pertinent time period. These Plaintiffs bring their claims against this Defendant pursuant to the case of *Parret v. Unnico Service*, 2005 OK 154 and its progeny and allege that the

5

University of Tulsa acted and failed to act, with the knowledge that the injury was substantially certain, to occur. Specifically, the University of Tulsa had been put on Notice numerous times by the Oklahoma Department of Environmental Quality that there were deficiencies in its radioactive program. The Oklahoma DEQ repeatedly cited the University of Tulsa for its lack of oversight, poor management, and improper documentation of the radioactive program. The Oklahoma DEQ even included specific warnings to the University of Tulsa of the severe and grave consequences that would occur if the deficiencies were not corrected. Despite these numerous and specific warnings and citations from the Oklahoma DEQ, the University of Tulsa failed to correct its deficiencies knowing that injury to its employees was a substantial certainty.

7. In Price v. Howard, 2010 OK 26, the Oklahoma Supreme Court considered a wrongful death action brought by a spouse of a person who died in a plane crash while traveling with his employer's president, who also died. Allegations included at the employer had knowledge that the plane was carrying too many passengers in violation of flight restrictions, that it was overweight and that it knowingly allowed the plane to take off in foul weather. The Court found, notwithstanding, that such a record did not demonstrate that the employer understood that there was a substantial certainty of injury. Id. at ¶2.

The Court explained that to remove the injured worker's claim from the exclusive remedy provisions of the [Act] and allow the workers to proceed in district court, "<u>nothing short of a demonstration of the employer's knowledge of the substantial certainty of injury will suffice</u>." (Emphasis original). <u>Id</u>. at ¶10.

The Court noted that while the employer's conduct in allowing the plane to take flight may have been reckless, no one could have reasonably determined that employer wanted to see its president or its employee (the plaintiff) die in a crash or that it was substantially certain that the plane crash was likely. <u>Id</u>. at ¶13 and ¶16. The TU employee and spouse plaintiffs allege that TU "acted and failed to act, with knowledge that injury was substantially certain to occur." However, as TU argues in its briefing, no one is even remotely suggesting that TU knew with substantial certainty that a third-party company would release a radioactive substance as a result of past "deficiencies" in TU's radioactive program. Even more importantly, the Plaintiff's allegations rely on the fact that TU had been put on notice numerous times by Oklahoma DEQ that there were deficiencies in its radioactive program, including lack of oversight, poor management and improper demonstration, and those

7

deficiencies would have severe and grave consequences if the deficiencies were not corrected.

Plaintiffs allege they failed to correct these deficiencies. However, in Price, supra, at ¶16, the Oklahoma Supreme Court opined that "violation of government safety regulations, even if willful and knowing," do not rise to the level of an intentional tort or an actual intent to injure. And, as stated by the Court in Wells, supra, "mere carelessness or negligence, however gross, will not suffice," at ¶19. Further, even TU's cognizance of a foreseeable risk, high probability, or substantial likelihood of injury are insufficient to impose tort liability. Price, supra, at ¶10.

8. The Court find that the exclusivity provisions of the Act apply to TU employees and, as a matter of law, there is no plausible demonstration by the Plaintiff that TU committed any intentional tort against these employees.

9. TU argues that the TU employees' spouses are also limited to the exclusive remedy of the Act, citing first Rios v. Nicor Drilling Co., 1983 OK 74. Rios does stand for the proposition that, in a wrongful death action, any claim which the decedent may have had against his employer was precluded by the exclusive remedy

8

provision of the Act and the wife's right of action for loss of consortium would also be barred. Id. at ¶ 7.

TU also cites to Harrington v. Certified Systems, Inc., 2001 OK CIV APP 53, where both the injured worker and his wife were subject to summary judgment as the injury in question was not the result of willful or intentional injury to the worker and, as such, the exclusivity provision of the Act applied. Citing Rios, the Court stated that the employer had immunity from any other liability, including a claim for loss of consortium by the wife. Id. at ¶36.

In accordance with those authorities, as well as the Court's finding that the claims of the TU employees allegedly injured as a result of the Cesium 137 spill are subject to the exclusivity provision of the Act, the Court finds that the claims of their spouses, dependents, or any person claiming through those TU employees are also subject to the exclusivity provision of the Act.

10. TU seeks dismissal with prejudice. In Prough v. Edinger, 1993 OK 130, ¶9, it provides that a trial court acts within its discretion in denying amendments to pleadings where the amendments would be futile. See also Bittle v. Oklahoma City Univ., 2006 CIV APP 66, ¶11. In this case, if the Court granted TU's Motion

with leave to the Plaintiffs to amend, there is no amendment that can be made which would change the very foundation of this Court's ruling – the status of the TU employee plaintiffs as employees of the University of Tulsa. Any amendment would be futile.

TU's Motion to Dismiss Plaintiff's Amended Complaint filed August 7, 2017, is granted. TU employee and TU employee spouse and dependents' claims are dismissed with prejudice.

11. Based on the Court's dismissal with prejudice of the TU employees, spouses, and dependents' claims, the Court's rough calculation is that approximately twenty-seven (27) of the original forty-two (42) plaintiffs have been dismissed, leaving only fifteen (15) plaintiffs. Defendants seek a "Lone Pine" order. Such an order is entered after initial disclosures but before discovery, and requires the plaintiffs in toxic tort cases to provide evidence sufficient to establish a prima facie case of injury, exposure, and causation, or else face dismissal of their claims. <u>Antero Res. Corp. v. Strudley</u>, 2015 CO 26, ¶1. Federal Rule of Civil Procedure 16(c) expressly authorizes their use in complex federal cases to reduce potential burdens on defendants, particularly in mass tort litigation. <u>Id.</u> at ¶1.

However, just as in <u>Antero</u> where neither party could cite to Colorado law allowing the issuance of a Lone Pine order, the Defendants here have not cited any Oklahoma law which specifically allows for the issuance of a Lone Pine order. They have directed the Court to Rule 5(G)(13) of the Rules for District Court. The Court agrees with the Defendants that this rule may very well provide a solid foundation upon which the Court could issue a Lone Pine order. However, with the Court's dismissal now of 27 of the 42 plaintiffs, leaving only 15 plaintiffs, the Court would deny the request to issue a Lone Pine order as the necessity for such an order has been severely diminished. The case is certainly now something less than a "mass" tort case. Further, with the now reduced number of plaintiffs, Oklahoma's Discovery Code, 12 O.S.2011, §§ 3224 et seq., as amended, will accommodate the parties' discovery adequately going forward and pending summary judgment practice. Defendants' Joint Motion for Entry of a Case Management Order filed December 11, 2019 is denied.

IT IS SO ORDERED.

_____
William D. LaFortune
District Judge

## AFFIDAVIT OF MAILING

I, Don Newberry, Court Clerk of Tulsa County, hereby certify that on the 24 day of November, 2020, a true and correct copy of the foregoing Order was served upon all parties by mailing to each of the attorneys/parties listed below, and a true and correct copy of the foregoing Order was filed in the above-mentioned case:

### NOTICE WAS MAILED TO:

- J. Derek Ingle, 2202 E 49th St #600, Tulsa OK 74105
- Ryan A Ray, Barrett L Powers, 2900 Mid-Continent Tower, 401 S Boston Ave., Tulsa OK 74103
- Mark Mitchell, PO Box 70148, Tulsa OK 74170
- Linda C Martin, Michael J English, 2 West 2nd St., Ste 700, Tulsa OK 74103
- Patrick E Carr, 4416 S Harvard, Tulsa OK 74135
- Patrick Wandres, 4835 S Peoria Ave., Tulsa OK 74105
- Mark E Hardin, PO Box 239, Tulsa OK 74101
- Robert Betts, PO Box 26350, OKC OK 73126
- Thomas J Heiden, Mary Rose Alexander, Thomas A Benhamou, PO Box 26350, OKC OK 73126
- Mary Quinn Cooper, Andrew L Richardson, Michael F Smith, Williams Center Tower II, 2 West 2nd St., Stee 1100, Tulsa OK 74103
- A Laurie Koller, 3701-A S Harvard, # 396, Tulsa OK 74103

_____
Deputy Court Clerk

I, Don Newberry, Court Clerk, for Tulsa County, Oklahoma, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears on record in the Court Clerk's Office of Tulsa County, Oklahoma, this

FEB 21 2025

By _____ Deputy